[Cite as *Bennett v. Scotts Miracle-Gro*, 2018-Ohio-3004.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### UNION COUNTY

JAMES R. BENNETT,

    PLAINTIFF-APPELLANT,              CASE NO.  14-18-04

    v.

THE SCOTTS MIRACLE-GRO CO.,
ET AL.,                           O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Union County Common Pleas Court
Trial Court No. 17CV0041

**Judgment Affirmed**

Date of Decision:    July 30, 2018

APPEARANCES:

    *Michael J. Muldoon* for Appellant

    *Robert A. Minor* for Appellee, Scotts Miracle-Gro Co.

**SHAW, J.**

{¶1} Plaintiff-appellant, James R. Bennett ("Bennett"), brings this appeal from the January 18, 2018, judgment of the Union County Common Pleas Court denying his claim for workers' compensation made against self-insured employer Scotts Miracle-Gro Co. ("Scotts") following a bench trial. On appeal, Bennett argues that the trial court erred in relying on a doctor's testimony to support its conclusion when the doctor had not personally examined Bennett.

*Relevant Facts and Procedural History*

{¶2} Bennett began working for Scotts in 1967 and continued working there until he retired in 2009. It is undisputed that while working for Scotts he was exposed to asbestos.

{¶3} In November of 2004 Bennett was diagnosed with the occupational disease of "pleural plaque" as a result of asbestos exposure. Bennett filed a workers' compensation claim with Scotts, a self-insured employer, and the claim was allowed. Bennett received ongoing monitoring and treatment until June 7, 2016, when he filed a motion for an additional allowance for the diagnosis of "asbestosis."

{¶4} Bennett's claim was heard on October 31, 2016, before a District Hearing Officer and it was ultimately denied based on the report from Dr. Herbert Grodner. Bennett appealed the matter to a Staff Hearing Officer, who heard the appeal on December 8, 2016. The Staff Hearing Officer affirmed the decision of

the District Hearing Officer, finding that the medical evidence in the file failed to sufficiently substantiate the presence of asbestosis. Bennett then appealed to the Industrial Commission, but that appeal was refused.

{¶5} On February 21, 2017, Bennett filed an appeal to the Union County Common Pleas Court from the decision of the Industrial Commission denying his claim for "asbestosis" against Scotts.[1] Scotts filed an answer denying that Bennett should be entitled to participate in benefits under Ohio Workers' Compensation law for asbestosis.

{¶6} The matter proceeded to a bench trial on November 22, 2017. The parties clarified the dispute at the beginning of the trial, indicating that there was no question that Bennett was exposed to asbestos while working with Scotts, and that there was no question that he was entitled to medical benefits and monitoring for his pleural plaque diagnosis; however, Scotts contended that the evidence could not establish that Bennett had developed asbestosis as it was defined in various textbooks, treatises, and in the Ohio Revised Code.

{¶7} The final hearing then proceeded, with Bennett testifying on his own behalf. Bennett identified the various jobs he had worked for Scotts and how he was exposed to asbestos while working for Scotts. Bennett indicated he began seeing

---

[1] Bennett joined the Bureau of Workers' Compensation to the appeal, but as Scotts was a self-insured employer, the Bureau had little interest in the matter and we will not further address the Bureau.

Dr. John Kim regularly for monitoring and treatment around 2005, and that he met with him as often as every 4-6 months since.

{¶8} Bennett testified that his condition left him short of breath and with pain in his sides. He indicated that his lung capacity had decreased over the years and that he was on an inhaler, Albuterol. Bennett testified that he had worked with a number of people at Scotts who had problems as a result of being exposed to asbestos, that their issues sometimes turned into mesothelioma and led, shortly thereafter, to death.

{¶9} Bennett did testify on cross-examination that he had been diagnosed by a different doctor, Dr. Patel, for asthma in recent years.

{¶10} Following Bennett's testimony, he introduced the deposition transcript of Dr. Kim, Bennett's ongoing pulmonologist. In his deposition, Dr. Kim testified that he specialized in "pulmonary critical care and sleep," that he was board certified, and that he first saw Bennett in June of 2005. Dr. Kim testified that in 2005 Bennett had pleural thickening, but he did not have symptoms such as a chronic cough at that time.

{¶11} Dr. Kim testified that over the years, Bennett complained off and on of shortness of breath, though not to a significant degree until October of 2015. At that time, Bennett had worsening chest pain and was sent for a cardiac evaluation, though no issues related to Bennett's heart were found.

{¶12} Dr. Kim ordered various tests to be done including a CT scan of Bennett, resulting in a report of "minimal subpleural scarring within the left lower lobe anterior basilar segment." But, the scan did not show interstitial fibrosis. Dr. Kim also had Bennett perform pulmonary function testing, which showed decreases in Bennett's pulmonary functioning since 2005, some to a significant degree. Dr. Kim testified that based on his physical examination and the test results, he diagnosed Bennett with asbestosis.

{¶13} Scotts cross-examined Dr. Kim by asking him if he was familiar with a number of books and treatises that defined asbestosis as requiring "diffuse interstitial fibrosis of the lungs," which was not present in Bennett's case in the CT scans. Dr. Kim testified that he disagreed with those definitions, including the definition of "asbestosis" in Ohio Revised Code 2307.91(D), which reads, " 'Asbestosis' means bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos fibers." Dr. Kim testified that such a definition would really only encompass severe instances of asbestosis.

{¶14} Dr. Kim also admitted on cross-examination that the "minimal subpleural scarring within the left lower lobe anterior basilar segment" found in Bennett on the CT scan could have been the result of factors other than asbestos exposure.

{¶15} With Bennett's testimony, the testimony of Dr. Kim, and accompanying exhibits, Bennett rested his case.

{¶16} In its case-in-chief Scotts presented the deposition testimony of Dr. Herbert Grodner, who had examined Bennett's records. Dr. Grodner had been licensed to practice medicine in 1967 and was board certified in internal medicine and pulmonary medicine; however, he was no longer engaged in private practice, engaging primarily in consulting for entities such as the Bureau of Workers' Compensation and the Department of Labor, etc. Dr. Grodner testified essentially that by definition if there was no interstitial fibrosis there was no pulmonary asbestosis in a patient. Hence he concluded that in his opinion, to a reasonable degree of medical probability, Bennett did not have pulmonary asbestosis because he did not meet the definition.

{¶17} On cross-examination Dr. Grodner admitted that he did not personally examine Bennett and that such a personal examination would certainly be helpful; however, he opined that it would only be helpful in confirming what was shown on the CT scans, and here, the CT scans did not show interstitial fibrosis.

{¶18} With the introduction of Dr. Grodner's testimony and accompanying exhibits, Scotts rested. The parties filed written closing arguments arguing for their positions.

{¶19} On January 18, 2018, the trial court filed its judgment entry on the matter, ultimately denying Bennett's claim for asbestosis. The trial court summarized all of the testimony presented at trial and through depositions and reached the following decision.

> **Considering all of the evidence, the Court finds that Plaintiff-Claimant has failed to meet his burden of proof necessary to establish that his claim should be additionally allowed for the condition of asbestosis. Even with the understanding that medical diagnosis "is an art, not a science," the evidence before the Court is convincing that interstitial fibrosis is a *sine qua non* for the diagnosis of asbestosis, and in the absence of such physiological finding, the diagnosis cannot be legally supported.**

(Doc. No. 26).

{¶20} It is from this judgment that Bennett appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The Plaintiff-Appellant would state that it was error for the Trial Judge to rely upon the deposition testimony of Dr. Herbert Grodner since Dr. Grodner was not an examining physician and, therefore, pursuant to *State ex rel. Wallace v. The Industrial Commission of Ohio*, 57 Ohio St.2d 55 (1979), the Court could not rely upon Dr. Grodner's testimony since he did not accept the factual findings of a doctor who had actually examined the Plaintiff-Appellant.**

{¶21} In his assignment of error, Bennett argues that the trial court erred by relying on Dr. Grodner's testimony since Dr. Grodner did not personally examine Bennett. Specifically, Bennett argues that under *State ex rel. Wallace v. The Industrial Commission of Ohio*, 57 Ohio St.2d 55 (1979), Dr. Grodner was required

to accept all factual findings of the examining physician since he did not personally examine Bennett.

{¶22} The case that Bennett relies primarily upon does not support his contention in this case. In *Wallace*, the Supreme Court of Ohio actually stated that a non-examining physician reviewing a file must accept the examining physician's factual findings, but can draw his own opinions therefrom. *See Wallace* at 59-60. Here, Dr. Grodner never challenged any of the factual findings made by Dr. Kim. He accepted that the CT scan showed "minimal subpleural scarring within the left lower lobe anterior basilar segment," that Bennett's lung capacity had decreased according to the testing and that he presented with a cough and shortness of breath more often. What Dr. Grodner did not accept was the opinion drawn therefrom— that Bennett had asbestosis.

{¶23} Dr. Grodner indicated that by definition asbestosis required "interstitial fibrosis," and the "gold-standard" for detecting interstitial fibrosis was through a CT scan. It was not disputed, even by Dr. Kim, that Bennett's CT scans did not show interstitial fibrosis. Therefore Dr. Grodner gave his expert opinion, based on the accepted factual evidence, that Bennett, by definition, did not have asbestosis.

{¶24} Based on this, we do not accept the premise of Bennett's argument that the trial court erred by allowing Dr. Grodner to render an opinion based on the

evidence he reviewed even though he did not personally examine Bennett. There is simply no indication that Dr. Grodner failed to accept any of the facts as presented to him. *See also State ex rel Lampkins v. Dayton Malleable, Inc*. 45 Ohio St.3d 14 (1989) (noting that *Wallace* had been relaxed since its ruling).

{¶25} Furthermore, to the extent that Bennett's argument seeks to challenge the trial court's decision as essentially being against the weight of the evidence, we cannot find that the trial court erred. Here the trial court was presented with conflicting expert opinions and the trial court reverted back to the definition of "asbestosis" used by the Ohio Revised Code and many medical journals, which required that there be interstitial fibrosis for a diagnosis. The trial court found that absent this definitional requirement, Bennett did not meet his burden of proof. Under the facts before us, we cannot find that the trial court clearly lost its way. Therefore, Bennett's assignment of error is overruled.

*Conclusion*

{¶26} For all of these reasons, Bennett's assignment of error is overruled and the judgment of the Union County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**